UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASEY F. HOFFMANN, | No. 2:15-cv-1382 DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| LASSEN COUNTY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendants interfered with his right to marry. Before the court are both parties' motions for summary judgment, plaintiff's motion to strike his deposition from the evidence in this case, and plaintiff's motion to hold defendants in contempt and for sanctions. For the reasons set forth below, the undersigned will dismiss plaintiff's motion to strike as unnecessary and deny plaintiff's motion to hold defendants in contempt and for sanctions. In addition, the undersigned will recommend plaintiff's motion for summary judgment be denied and defendants' motion be granted.

## BACKGROUND

**I.     Allegations in the Complaint**

This case is proceeding on plaintiff's complaint filed here on June 30, 2015. (ECF No. 1.) Defendants are Lassen County and Lassen County Clerk-Recorder Julie Bustamante. In the

1  spring of 2015, plaintiff was incarcerated at the Lassen Adult Detention Facility ("Jail").  At that
2  time, plaintiff wrote the Lassen County Clerk-Recorder to request an application for a marriage
3  license.  Plaintiff planned to marry fellow Jail inmate Dena Adams.  Plaintiff received a letter
4  dated May 7, 2015 from a deputy clerk in the Office of the Lassen County Clerk-Recorder.
5  Plaintiff attached a copy of the letter to his complaint.  The letter informed plaintiff that the
6  deputy clerk was unable to provide plaintiff a marriage application because "[w]hen purchasing a
7  marriage license in Lassen County, both parties must be physically present to sign the marriage
8  license in our office and to provide a valid form of identification." (ECF No. 1 at 4.)

## II.     Procedural Background

10  On November 14, 2016, defendants answered the complaint. (ECF No. 28.)  On November
11  21, the court issued a Discovery and Scheduling Order setting a deadline of March 10, 2017 for
12  discovery and June 2, 2017 for pretrial motions. (ECF No. 29.)

13  On March 13, 2017, plaintiff filed a motion to compel. (ECF No. 31.)

14  On March 20, 2017, plaintiff filed a motion for summary judgment (ECF No. 32) and on
15  April 28, defendants filed a motion for summary judgment (ECF No. 36).

16  On May 26, 2017, the court granted in part plaintiff's motion to compel.  The court required
17  defendants to provide plaintiff with responses to certain deposition questions as though those
18  questions had been propounded as interrogatories.

19  Also on May 26, plaintiff filed two motions.  First, he filed a motion to strike his deposition
20  transcript from the evidence available on summary judgment.  (ECF No. 45.)  Second, plaintiff
21  filed a motion to hold defendants in contempt and for sanctions.  (ECF No. 46.)  Plaintiff
22  contends defendants failed to properly notify plaintiff that his deposition would relate to this case.

23  Finally, on June 15, 2017, plaintiff filed a motion to compel defendants to comply with the
24  May 26 order.  (ECF No. 50.)  Because defendants submitted a timely response to plaintiff
25  pursuant to the May 26 order, the court denied plaintiff's motion.  (ECF No. 55.)  The court then
26  gave plaintiff an opportunity to file a supplement to his opposition to defendant's summary
27  judgment motion based on the new discovery responses.  Plaintiff has not filed a supplemental
28  opposition brief.

## MOTIONS FOR SUMMARY JUDGMENT

Based on the material evidence presented in connection with the pending cross-motions for summary judgment, and for the reasons stated below, the undersigned concludes that plaintiff's motion for summary judgment should be denied, and defendants' motion for summary judgment should be granted. The undisputed material facts do not show that defendant Bustamante acted to interfere with plaintiff's right to marry and that defendant Lassen County had a policy or custom to interfere with inmates' right to marry.[1] Further, plaintiff fails to present evidence establishing that there are genuine issues of material fact with regard to the liability of defendants.

### I.      Legal Standards

#### A.   Summary Judgment Standards under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

////

---

[1] In his complaint, plaintiff references only his right to marry. However, in some of his many subsequent filings, plaintiff mentions that defendants violated other constitutional rights such as the Eighth Amendment right to be free of cruel and unusual punishment and his right to equal protection of the laws. The court will not address new issues that were not made part of plaintiff's complaint. See E.D. Cal. R. 220 (The court cannot refer to prior documents or to subsequently filed supplements to make the complaint complete.) And, in any event, plaintiff offers no proof to support of those claims.

3

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
////

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Other Applicable Legal Standards

#### 1. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

#### 2. Right to Marry

The United States Supreme Court has held that prisoners have a constitutional right to marry. See Turner v. Safely, 482 U.S. 89, 95-96 (1987) (citing Zablocki v. Redhail, 434 U.S. 374 (1978),

and Loving v. Virginia, 388 U.S. 1, 12 (1967)).  Most cases addressing a prisoner's right to marry involve a challenge to prison rules.  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Turner, 482 U.S. at 89.  A court must consider four factors to determine whether a prison regulation is reasonable: (1) whether "there [is] a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."  Id. at 89-90.

In addition to prison rules, a statutory requirement that significantly interferes with an inmate's right to marry may be unconstitutional.  Some courts have held that a state law requiring both parties to sign a marriage application in the presence of the recorder of deeds is unduly restrictive of inmates' right to marry.  See Fuller v. Norman, 936 F. Supp. 2d 1096, 1097-98 (W.D. Mo. 2013); Nichols v. Moyers, No. 4:13CV735 CDP, 2013 WL 2418218 at *1-2 (E.D. Mo. June 3, 2013).

### 3. Supervisory Liability

Supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Rather, a plaintiff must establish that each individual "[g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."  Id.  In other words, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right.  Id.  Thus, supervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor]

knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (internal citations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (citations omitted).

### 4. Municipality Liability

A municipality may not be held liable unless its policy or custom caused the constitutional injury. See Leatherman v. Tarrant County Narc. Intell. and Coord. Unit, 507 U.S. 163, 166 (1993); Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). Thus, a municipality may not be sued solely because an injury was inflicted by one of its employees or agents. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Rather, the municipality is liable only when the execution of its policy or custom inflicts the constitutional injury. Id.; Monell, 436 U.S. at 690-94 (plaintiff must show the constitutional injury was caused by employees acting pursuant to the municipality's policy or custom); Miranda v. City of Cornelius, 429 F.3d 858, 868 (9th Cir. 2005).

A section 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless the plaintiff shows: (1) that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; (2) that the municipal defendant adhered to the policy or custom with "deliberate indifference to the constitutional rights of [the jail's] inhabitants;" and (3) that the policy or custom caused the plaintiff's injury. Castro v. County of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016); Sadoski v. Mosley, 435 F.3d 1076, 1080 (9th Cir. 2006). To establish the existence of an unlawful policy, plaintiff must show one of three things: (i) a facially unconstitutional government policy, or an unconstitutional "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (ii) a violation caused by an individual with final policy-making authority; or (iii) an individual with final policy-making authority ratifying a subordinate's unconstitutional action and the basis for it. Gillette v. Delmore, 979 F.2d 1342, 1346–7 (9th Cir. 1992).

**II.     Undisputed Material Facts**

The following facts are not disputed by the parties.[2] While he was incarcerated at the Jail, plaintiff sought to marry another Jail inmate, Dena Adams. Plaintiff wrote the county clerk's office to obtain a marriage application and marriage license. (Plaintiff's Statement of Undisputed Facts ("Pl.'s Undisp. Facts") (ECF No. 32 at 2); Defendants' Objections to Plaintiff's Undisputed Facts ("Dfts.' Objs.") (ECF No. 34-2 at 2).) On May 7, 2015, plaintiff received a letter from Lassen County Deputy Clerk Michele J. Yderraga which stated that "[w]hen purchasing a marriage license in Lassen County, both parties must be physically present to sign the marriage license in our office." (Ex. to Compl. (ECF No. 1).) Plaintiff and Adams have never married.

In about the last ten years, the County issued approximately 482 marriage licenses to persons in custody.[3] (Dfts.' Undisp. Facts (ECF No. 36-2 at 2); Apr. 25, 2017 Decl. of Julie Bustamante ("Bustamante Decl.") (ECF No. 36-4) at 2.) In approximately that same time period, the county received requests for marriage licenses from only two Jail inmates. (Bustamante's Resp. to Interrogs. (ECF No. 32 at 29-30).)

**III.    Analysis**

Plaintiff contends defendants had a policy of requiring both parties to be present to obtain a marriage license and that that policy resulted in the denial of marriage licenses to inmates, particularly Jail inmates. Defendants argue that Lassen County abides by the requirements of state law with respect to the issuance of marriage licenses. State law permits inmates to obtain a marriage license while incarcerated. The California Family Code provides: "Except as provided in Sections 420 and 426, applicants to be married shall first appear together in person before the

---

[2] The parties dispute a number of facts and plaintiff seeks to strike his deposition transcript from the court's consideration of these motions. This court's findings do not depend on any of those disputed facts or on any of the testimony from plaintiff's deposition. Accordingly, the court will dismiss plaintiff's motion to strike as unnecessary and deny his motion for sanctions.

[3] In his opposition to defendants' summary judgment motion, plaintiff states that he "objects" to this statement. (Plaintiff's Objection to Dfts.' Undisp. Facts ("Pl.'s Objs.") (ECF No. 47-2) at 5.) Plaintiff's objection is: "Defendant purposely and with intent oppress inmates at the County Jail in that the 10 years she's been in office (2) persons have asked for marriage licenses in County Jail and (482) in state prison." It is apparent that plaintiff is not objecting to the factual statement that the County has issued approximately 482 marriage licenses to persons in custody.

1  county clerk to obtain a marriage license." Cal. Fam. Code § 359(a). Section 426 specifies an
2  exception to the presence requirement for incarcerated persons who are physically unable to
3  appear in person before the county clerk. In that situation, California law provides that "a
4  marriage license may be issued by the county clerk to the person solemnizing the marriage."
5  According to defendants, the letter plaintiff received from the deputy clerk correctly described the
6  general rule for obtaining a marriage license.

7  Plaintiff's position is unsupported. The only evidence in the record to support a finding that
8  Lassen County had any sort of rule or policy that was at odds with state law is the one letter sent
9  to plaintiff by the deputy clerk. That one letter is not sufficient to show that Lassen County had a
10 policy or custom requiring both parties to be present to obtain a marriage license. Oklahoma City
11 v. Tuttle, 471 U.S. 808, 823-24 (1985) ("[p]roof of a single incident of unconstitutional activity is
12 not sufficient to impose liability under Monell"); Davis v. City of Ellensburg, 869 F.2d 1230,
13 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom
14 based solely on the occurrence of a single incident of unconstitutional action by a non-
15 policymaking employee."). Rather, the reasonable inference from the uncontroverted evidence is
16 to the contrary. It shows Lassen County regularly issued marriage licenses to inmates and
17 therefore did not have a policy requiring both parties to be present to obtain a license.

18 Plaintiff also appears to argue that the fact so many inmates received licenses, but only two
19 Jail inmates requested licenses, demonstrates some sort of policy of discrimination against Jail
20 inmates. The court does not find this argument persuasive. It compares apples (inmates who
21 have received marriage licenses) with oranges (Jail inmates who have requested marriage
22 licenses). Further, no evidence connects the fact that very few Jail inmates requested marriage
23 licenses with any actions, or inactions, on the part of defendants.

24 The court also rejects defendants' position that the letter from the deputy clerk was
25 appropriate. It was not. The letter's description of the requirements for obtaining a marriage
26 license in Lassen County was not just less-than-complete; it was wrong. The fact that the letter
27 was addressed to a Jail inmate exacerbated the problem. However, the court need not reach the
28 question of whether the deputy clerk's erroneous letter amounted to an interference with

plaintiff's right to marry that is significant under § 1983.  Even assuming for purposes of the analysis of plaintiff's claims herein that the letter constituted actionable interference, plaintiff fails to either:  (1) support his own summary judgment motion by providing undisputed facts showing defendants were responsible for that letter, or (2) oppose defendants' summary judgment motion by showing there are material issues of fact about defendants' responsibility.

### A.  Liability of Defendant Bustamante

Defendant Julie Bustamante is the Clerk-Recorder of Lassen County.[4]  Her name appears on the letterhead of the letter plaintiff received from Michele J. Yderraga, Deputy Clerk.  (Compl. (ECF No. 1 at 4).)  While plaintiff makes many allegations about defendants generally, he provides no evidence to show that Bustamante was involved in the letter sent by Deputy Clerk Yderraga.

With respect to Bustamante's individual liability, plaintiff fails to show Bustamante had any involvement in or even knowledge of the deputy clerk's response to plaintiff's inquiry about a marriage license.  Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between her and the claimed constitutional violation must be shown.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Plaintiff offers no evidence to show that Bustamante took any affirmative action or failed to perform an act she was legally required to do that resulted in denying plaintiff the right to marry.  Johnson, 588 F.2d at 743.

To the extent plaintiff claims Bustamante failed to train deputy clerk Yderagga to respond appropriately to an inmate's request for a marriage license, plaintiff's has not supported that argument with any evidence.[5]  To establish a failure-to-train claim, plaintiff must show that "'in

---

[4] It is not clear from the complaint whether plaintiff named Bustamante in her individual or official capacity, or both.  Plaintiff states in his reply to defendants' summary judgment motion that he named Bustamante in both capacities.

[5] The only evidence presented on this subject is defendant Bustamante's response to plaintiff's interrogatory asking whether she "trained all [her] subordinates to implore this policy?"  Bustamante objected, but responded that "subordinates are trained to follow the law."  (Ex. B to

light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)).

Plaintiff must show the failure to train resulted from defendant Bustamante's "deliberate" or "conscious" choice and that a sufficient causal connection exists between the supervisor's wrongful conduct and the alleged constitutional violation. Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998). Plaintiff must present some evidence to establish a material issue of fact exists to support his apparent allegation that Bustamante failed to train deputy Yderraga. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). However, plaintiff has presented no evidence to show what training Bustamante did or did not do or whether the letter from deputy clerk Yderraga was the result of a lack of training. On this record, the court finds no material issue of fact regarding Bustamante's training of Yderagga.

With respect to Bustamante's official liability, plaintiff's suit against her is no different from his suit against the county. "'When both an officer and the local government entity are named in a [§ 1983] lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.'" Shelley v. County of San Joaquin, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014) (quoting Hillblom v. Cnty. of Fresno, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008)). Therefore, defendants are entitled to summary judgment on plaintiff's claim against Bustamante in her official capacity for the same reasons, set out below, that defendants are entitled to summary judgment on plaintiff's claim against Lassen County.

Drawing all reasonable inferences in plaintiff's favor, the court finds plaintiff has failed to support his motion for summary judgment with undisputed facts to show liability by Bustamante.

---

Plaintiff's Summ. J. Mtn. (ECF No. 32 at 31).)  When asked "how many persons have you trained to execute this policy," Bustamante responded, "Six persons have been trained to follow the law." (Id. at 32.)  Nothing about these responses shows that deputy clerk Yderagga was trained to respond to plaintiff's letter as she did or that the training of deputy clerks was inadequate.

11

1  Nor has plaintiff submitted sufficient evidence to create a genuine issue of material fact with
2  respect to his claim that defendant Bustamante interfered with his right to marry. Accordingly,
3  summary judgment is appropriate for Bustamante.

### B. Liability of Defendant Lassen County

As described above, plaintiff fails to show Lassen County had a policy of requiring both parties to be present to obtain a marriage license. A municipality is only liable for actions of its employees pursuant to a policy or custom. See Monell, 436 U.S. at 690-94; Long, 442 F.3d at 1185; see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (to succeed, plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity). There may be some municipal liability where a single decision is made by a municipal policymaker and there is evidence the decision was a "conscious, affirmative choice." Gillette, 979 F.2d at 1347 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-84 (1986)). However, in the present case, nothing in the record indicates the deputy clerk Yderagga was a "municipal policymaker."

In short, the facts established by plaintiff show one specific incident in which he was misinformed of the requirements for obtaining a marriage license. Plaintiff does not show a pervasive practice or custom of misinforming jail inmates nor does he show a policy of doing so. Plaintiff fails to establish defendant Lassen County bears any liability under Monell for interfering with plaintiff's right to marry.

### CONCLUSION

Plaintiff has failed to present any proof, or present evidence to create a material issue of fact, that defendant Bustamante acted in any way, or failed to act in any way, to interfere with plaintiff's right to marry. He has also failed to present any evidence to support a finding, or create a triable issue of fact, that defendant Lassen County had a policy of requiring both parties to be present to obtain a marriage license. A complete failure of proof concerning an essential element of plaintiff's case dictates summary judgment in favor of defendants. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

////

With respect to plaintiff's two outstanding motions, to strike and for contempt/sanctions, the court did not rely on any of plaintiff's statements from his deposition. Therefore, the court need not consider whether the transcript of plaintiff's deposition should be stricken and, because plaintiff has thus suffered no damage from any inappropriate noticing of his deposition, the court will deny plaintiff's motion for sanctions on that basis as well.

Accordingly, it is HEREBY ORDERED that:

1. The Clerk of the Court shall assign a district judge to this case.
2. Plaintiff's motion to strike (ECF No. 45) is dismissed as unnecessary; and
3. Plaintiff's motion for sanctions (ECF No. 46) is denied.

Further, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 32) be denied; and
2. Defendants' motion for summary judgment (ECF No. 36) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 24, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/hoff1382.msj